UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NINA J. BLACKBURN, et al.,

    Plaintiffs,

v.

GOVERNOR GRETCHEN WHITMER
and HEIDI E. WASHINGTON,

    Defendants.

Case No. 20-12579
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [18],
DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [1],
AND DENYING MOTION FOR DEFAULT JUDGMENT [13]**

    Sixteen plaintiffs have filed this action against Governor Gretchen Whitmer and Michigan Department of Corrections (MDOC) Director Heidi Washington, alleging that MDOC's management of COVID-19 risks for prisoners with "pre-existing conditions" at Cooper Street Correctional Facility in Jackson, Michigan violates the Eighth Amendment's prohibition of cruel and unusual punishment. (ECF No. 1.) Twelve plaintiffs are currently incarcerated at Cooper Street. Four plaintiffs are not incarcerated but have filed suit "on behalf of all Michigan Citizenry/General population thereof." (ECF No. 1, PageID.2.) All plaintiffs seek damages and injunctive relief. Among their requests for relief, Plaintiffs seek a temporary restraining order directing MDOC to identify all prisoners who have "documented pre-existing medical conditions causing the person to be immunocompromised," including diabetes, cancer treatment, HIV/AIDS, and severe obesity, and transfer those prisoners to a facility with individual cells. (ECF No. 1, PageID.2, 26.) Plaintiffs have also filed a motion for default judgment. (ECF No. 13.) This Court referred all pretrial motions in this matter to Magistrate Judge Patricia T. Morris pursuant to 28 U.S.C. § 636(b)(1). (ECF No. 10.)

Magistrate Judge Morris recommends that the Court deny both the TRO and the motion for default judgment. (ECF No. 18.) Plaintiffs filed objections pursuant to Federal Rule of Civil Procedure 72(b). (ECF No. 35.) For the reasons given below, the Court overrules Plaintiffs' objections and adopts the report and recommendation.

## I. Standard of Review

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II. The TRO

The Court agrees that Plaintiffs have not met the requirements for a temporary restraining order against Governor Whitmer and Director Washington. To obtain a TRO, Plaintiffs must show that they are likely to succeed on the merits of their claim, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535–36 (6th Cir. 2020). As the Court will explain, Plaintiffs have not met this first element.

The Magistrate Judge recommends that the Court deny the TRO because Plaintiffs have not shown a likelihood of success on the merits on their Eighth Amendment claims. (ECF No. 18, PageID.720–728.) The Magistrate Judge makes three key findings. First, the plaintiffs who are not presently incarcerated lack standing to challenge others' conditions of confinement. (ECF No. 18, PageID.720–721 (citing, e.g., *Tate v. United States*, 72 F. App'x 265, 266 (6th Cir. 2003); 28 U.S.C. § 1654).) Second, the plaintiffs who are presently incarcerated have not demonstrated that they have exhausted their administrative remedies in prison as required under the Prison Litigation Reform Act. (ECF No. 18, PageID.721–725 (citing *Woodford v. Ngo*, 548 U.S. 81, 83 (2006); 42 U.S.C. § 1997e(a) (2000)).) Third, Plaintiffs are unlikely to succeed on their claim under the Eighth Amendment because the Sixth Circuit has recently held that similar COVID-19 measures (to those at Cooper Street) adopted at FCI Elkton, a federal prison in Ohio, were sufficient to show that prison officials "responded reasonably" to the known risk to inmate health and safety. (ECF No. 18, PageID.727–728 (citing *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020).)[1]

Plaintiffs make several general arguments that the Court will not address because they do not identify a specific objection for de novo review. For example, Plaintiffs argue that prison restrictions during the pandemic have limited their access to legal resources that would allow them to better prepare their case. (*See* ECF No. 35.)

But Plaintiffs do raise two specific objections that the Court will address: first, standing for Plaintiffs who are not currently incarcerated, and second, exhaustion by Plaintiffs who are current prisoners.

---

[1] Judge Morris also notes in her report that Plaintiffs have not properly served Defendants, which Plaintiffs do not dispute. (*See* ECF No. 18, 35.) Plaintiffs have sought an extension in a separate motion. (ECF No. 32.) The Court need not address service here in order to adopt the Magistrate Judge's recommendation that the TRO be denied.

### A. Non-Prisoners

Plaintiffs object to Magistrate Judge Morris' finding that the plaintiffs who are not presently incarcerated lack standing to challenge others' conditions of confinement. (ECF No. 18, PageID.720–721.) But the law clearly states that "the irreducible constitutional minimum of standing" requires that "the plaintiff must have suffered 'an injury in fact' that is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiffs who are not currently in prison have not alleged that they have suffered any injury in fact. They argue that they are acting "on behalf of all Michigan Citizenry/General population thereof." (ECF No. 1, PageID.2.) But concerned citizenship is not sufficient for federal standing. It is not enough for a plaintiff to allege "merely that he suffers in some indefinite way in common with people generally." *Lujan*, 504 U.S. at 574. Even if the non-prisoner plaintiffs have a personal relationship or other connection with the Plaintiffs who are currently incarcerated, that does not confer standing. *See, e.g.*, *Tate v. United States*, 72 F. App'x 265, 266 (6th Cir. 2003) (affirming that federal prisoner's friend and mother lacked standing to seek habeas relief as next friend on his behalf because they did not demonstrate the prisoner was unable to prosecute the case on his own behalf).

Because the non-prisoner plaintiffs have not alleged any facts that would indicate they have suffered an injury in fact, and they have not offered any reason why currently incarcerated prisoners cannot prosecute the case on their own behalf, the non-prisoner plaintiffs do not have standing to proceed in this case. The Court therefore adopts the Magistrate Judge's recommendation and dismisses the non-prisoner plaintiffs from this action.

### B. Current Prisoners

The twelve currently incarcerated plaintiffs remain. For these plaintiffs, the Magistrate Judge recommends denying the TRO because they have not exhausted their administrative remedies and have not shown a likelihood of success on the merits of their Eighth Amendment claim. Plaintiffs object to both of these findings.

#### 1. Exhaustion

Regarding exhaustion, some legal and procedural background is helpful. Under the Prison Litigation Reform Act, "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000). "There is no question that exhaustion is mandatory." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner has exhausted when they have pursued "all available remedies," following "proper" administrative procedure so that the prison "addresses the issue on the merits." *Woodford v. Ngo*, 548 U.S. 81, 85, 90–95 (2006). The prison's requirements, and not the PLRA, define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

This case involves the MDOC administrative rules set out in MDOC Policy Directive 03.02.130; *Prisoner/Parolee Grievances*, Michigan Department of Corrections, https://perma.cc/Z7BX-MBQ9 (last updated Jan. 15, 2021). MDOC's grievance procedure has three steps: a Step I grievance, and Step II appeal, and a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130. MDOC's response to a Step III appeal is final, resulting in administrative exhaustion. MDOC PD 03.02.130 ¶¶ C, II. Under the MDOC Policy, a valid grievance must include "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC PD 03.02.130 ¶ S. Because "complete exhaustion occurs only as to those persons

5

named or alleged to have committed any wrongful act in the grievance," a plaintiff's failure to name or otherwise identify each individual defendant in their MDOC grievance is "fatal" to exhaustion. *Ritchie v. Haas*, No. 2:17-CV-10762, 2018 WL 1770502, at *4–5 (E.D. Mich. Mar. 13, 2018).

In response to Plaintiffs' motion for a TRO, Defendants argued that the incarcerated Plaintiffs had not exhausted their claims because none of them had (1) completed all three steps of the prison grievance process and (2) named Whitmer and Washington in their grievance or appeals. (ECF No. 11, PageID.205–217.) The Magistrate Judge agreed with Defendants. She found that only Plaintiffs Derickson, Pierson, and Triplett "properly made it to Step III of [the grievance] process," but their claims "did not concern any issues related to COVID-19" and "none of these Plaintiffs named Defendant Whitmer or Washington in their grievances." (ECF No. 18, PageID.724 (citing Exhibit I, ECF No. 11-10, PageID.522–523).) Plaintiffs object to Judge Morris's finding that they have not shown exhaustion of administrative remedies as required before filing suit. (ECF No. 18, PageID.721–725; ECF No. 35, PageID.972–973.)

But so far in this case, the treatment of exhaustion has missed an important rule. In unpublished but consistent opinions, the Sixth Circuit has held that prisoners "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Peoples v. Bauman*, No. 16-2096, 2017 WL 7050280, at *4 (6th Cir. Sept. 5, 2017) (quoting *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004)). Complaints about the "content of a policy or procedure" are non-grievable under MDOC rules unless a prisoner is challenging how the policy was specifically applied to him. MDOC PD 03.02.130 ¶ J(8). Neither party has acknowledged this case law or its application here. When Plaintiff Jones filed a grievance that naming the Governor and "MDOC" and complaining the inadequate COVID-19 precautions constituted deliberate indifference and

6

cruel and unusual punishment, Cooper Street administrative authorities rejected that grievance as "non-grievable" under MDOC Policy. (ECF No. 1, PageID.81.) The rejection was upheld at Step II and Step III. (*Id.* at PageID.88, 75.) Defendants do not dispute that the Plaintiffs are challenging the prison's COVID-19 management policies and procedures. And exhaustion is not a pleading requirement; it is an affirmative defense and therefore Defendants' burden. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011).

Based on the Sixth Circuit's guidance, the Court will not deny the TRO for failure to exhaust. *See Bauman*, 2017 WL 7050280, at *4 (reversing district court ruling that plaintiff had failed to exhaust claims where the grievance was rejected as non-grievable by MDOC because it grieved the content of a policy or procedure). The Court therefore declines to adopt the Magistrate Judge's recommendation to deny the TRO on that basis. The parties may of course choose to revisit exhaustion, as appropriate, at a later stage of this case. Resolving exhaustion is not necessary at this stage because the Court agrees that Plaintiffs have not shown a likelihood of success on the merits of their claim.

### 2. Deliberate Indifference

Regardless of exhaustion, Plaintiffs are unlikely to succeed on their deliberate indifference claim under the Eighth Amendment because they have not shown that Defendants' response to the COVID-19 pandemic constitutes an Eighth Amendment violation.

The Sixth Circuit set a high bar for this claim in another case challenging COVID-19 precautions at FCI Elkton, a federal prison in Ohio. *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020). As the Court explained, to show that an official's deliberate indifference to prison conditions violates the Eighth Amendment, an inmate must demonstrate both an "objective" substantial risk of serious harm and "subjective" deliberate indifference. *Wilson*, 961 F.3d at 839

7

(quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Sixth Circuit found in *Wilson* that "the objective prong [wa]s easily satisfied" because the plaintiffs provided evidence that they were "incarcerated under conditions posing a substantial risk of serious harm," given the substantial risk of serious harm posed by the COVID-19 virus, born out by the infection and fatality rates at FCI Elkton. *Wilson*, 961 F.3d at 840. But under the subjective prong, "the question is whether petitioners have demonstrated that the BOP's response to the COVID-19 pandemic has been deliberately indifferent to this serious risk of harm." *Id.* at 840. In *Wilson*, The BOP provided evidence that FCI Elkton had adopted procedures to screen inmates, isolate and quarantine inmates who might have contracted the virus, limit movement within the prison and limit group gatherings, test in accordance with CDC guidance, limit staff and visitors, subject staff and visitors to enhancing screening, clean common areas, provide cleaning agents for inmates to clean their cells, provide "continuous" access to sinks, water, and soap, educate staff and inmates about virus prevention, and provide masks and other personal protective equipment. *Wilson*, 961 F.3d at 841. From this evidence, the Sixth Circuit concluded that "the BOP responded reasonably to the known, serious risks posed by COVID-19 to petitioners at Elkton," even though "the harm imposed by COVID-19 on inmates at Elkton 'ultimately [is] not averted.'" *Id.* As a result, the court found that the *Wilson* plaintiffs were unlikely to succeed on the merits of their Eighth Amendment claim, and the Sixth Circuit reversed the district court's grant of a preliminary injunction. *Wilson*, 961 F.3d at 840–41.

The Sixth Circuit reached a similar decision in an unpublished opinion shortly afterwards. In *Cameron*, prisoners at the Oakland County jail filed a combined § 1983 class action and § 2241 habeas petition against the county and the county sheriff, alleging that their deliberate indifference to substantial risk of harm posed by COVID-19 at jail violated their rights under the Eighth and

Fourteenth Amendments. *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020). The Sixth Circuit ruled that they had failed to show a likelihood of success on the merits for a preliminary injunction because the prison took reasonable steps to limit the spread of the virus, including instructing staff on enhanced cleaning procedures, stopping visitation, adopting quarantine procedures, screening prisoners entering the facility, and conducting a prison release program. *Id.* at 984. The Sixth Circuit found no deliberate indifference on that record even where the plaintiffs presented evidence that the prison was housing prisoners in group cells even though many of the prison's cells were empty: "Even if those empty cells could be occupied, that Defendants quarantine any inmate exposed to COVID-19 is strong evidence that they are responding reasonably to the risk posed by the virus." *Id.* at 986.

Plaintiffs in this case raise serious concerns about COVID-19 management at Cooper Street Correctional Facility in Jackson, but they do not explain how their situation is meaningfully different from FCI Elkton in *Wilson*. Plaintiffs allege—it is not always clear whether they are attributing conduct to the named Defendants or to individual prison guards—that "they've done nothing to prevent and/or continue to violate all of the MDOC's protocols for reducing the spreading and contracting for the COVID-19." (ECF No. 35, PageID.971.) But at other times, Plaintiffs acknowledge the prison's protocols and instead argue that defendants are "not performing their mandatory duties by enforcing the law." (ECF No. 1, PageID.8; *see also* ECF No. 26.)

To the extent that Plaintiffs argue that Defendants have done *nothing* in response to COVID-19, that claim is directly contradicted by Plaintiffs' argument that Defendants are failing to adhere to their own protocols, as well as the evidence before the Court. Plaintiffs have provided no evidence that Cooper Street violates *all* of MDOC's protocols, or that the prison has done

9

"nothing" in response to the pandemic. And Defendants present affidavits detailing precautions at Cooper Street that are substantially similar to the precautions at FCI Elkton, including affidavits by Defendant Washington (ECF No. 11-4) and Michelle Floyd, the Warden at Cooper Street (ECF No. 11-5). Their efforts include suspending all in-person visits, health screenings for staff, reduced transfers between facilities, health screenings for any prisoners who are transferred, "extra care" cleaning and sanitizing cells, cleaning products made available next to phones and other high traffic areas, increased supplies of soap for prisoners, posters displaying CDC guidance, minimizing in-person attendance at parole hearings, and adopting certain social distancing measures, including "smaller groups for programs and classrooms," and greater distance between seats during meals. (ECF No. 11-4, PageID.297–298.) The evidence available at this stage of the case indicates that Defendants have done far more than nothing, even if their efforts have been imperfect.

To the extent that Plaintiffs argue that Defendant's COVID-19 efforts violate the Eighth Amendment because the implementation is deficient, this is the same argument that the Sixth Circuit rejected in *Wilson*. There, the plaintiffs argued that "BOP's approach and procedures are limited in effectiveness due to the dormitory-style housing at Elkton making it impossible to maintain physical distance and because there are insufficient supplies." *Wilson*, 961 F.3d at 834. Plaintiffs here argue that Cooper Street is overcrowded, that social distancing is frequently impossible despite the formal protocols. (ECF No. 35, PageID.971.) But the Sixth Circuit explained in *Wilson* that substantially similar COVID-19 precautions—including enhanced screening, testing, quarantining, cleaning, educating staff and inmates, and providing personal protective equipment—constituted a a reasonable response to the known risks of COVID-19 even if "the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted.'" *Wilson*, 961 F.3d

10

at 841. The Court explained that "even if the BOP's response [at FCI Elkton] has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk." *Wilson*, 961 F.3d at 843. The evidence before this Court at this stage of the case indicates that the COVID-19 precautions at Cooper Street largely mirror the efforts at FCI Elkton in *Wilson*. The evidence therefore indicates that Whitmer and Washington's response to the known risks of COVID-19 has been reasonable.

To the extent that Plaintiffs argue that prison guards at Cooper Street are not enforcing or complying with MDOC protocols—which Plaintiffs hint at when, for example, they complain that prison officers are "not wearing masks" (ECF No. 35, PageID.971)—Plaintiffs have not named any prison officers as defendants in this action. If Plaintiffs intend to allege that prison officials' *enforcement* of MDOC COVID-19 protocols are so deficient as to violate the Eighth Amendment, that is a different claim than the one raised here against Defendants Whitmer and Washington.

Because Plaintiffs have not shown that Defendants Whitmer and Washington have acted with subjective deliberate indifference, Plaintiffs have not demonstrated a likelihood of success on the merits of their Eighth Amendment claim as required for a temporary restraining order. The Court adopts the Magistrate Judge's recommendation and denies the TRO.

### III. The Motion for Default Judgment

After filing the TRO, Plaintiffs also moved for default judgment. (ECF No. 13.) The Magistrate Judge recommends that the Court deny the motion for default judgment because Plaintiffs did not properly serve Defendants and did not seek entry of default before moving for default judgment as required under Federal Rule of Procedure 55. (ECF No. 18, PageID.715–718.) Plaintiffs object that prison restrictions during the pandemic have limited their access to legal resources that would allow them to better prepare their case. (ECF No. 35, PageID.969.) (They

also suggest that the State of Michigan, and the Governor in particular, have deliberately "shut down the entire state" and thereby "cause[d] the Plaintiffs to serve them improperly by no fault of their own." (*Id.*))

Plaintiffs concede that they have not served Defendants properly and that they could not "properly file the default of judgment request." (ECF No. 35, PageID.969.) Although Plaintiffs make objections and argue these deficiencies were "no fault of their own," Plaintiffs ultimately conclude by withdrawing their motion for default judgment. (*Id.*)

The Court will grant Plaintiffs' request to withdraw the motion for default judgment.

### IV. Conclusion

Accordingly, the Court ADOPTS IN PART the Magistrate Judge's report and recommendation (ECF No. 18).

The motion for a temporary restraining order (ECF No. 1) is DENIED.

Plaintiffs' request to withdraw their motion for default judgment (ECF No. 13) is GRANTED and the motion is WITHDRAWN.

The four plaintiffs who are not presently incarcerated—Nina J. Blackburn, Rochelle Brady, Donovan Tillery, and Thomas Scott—are DISMISSED from this action for lack of standing.

SO ORDERED.

Dated: January 26, 2021

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE