UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN T. GEORGE, *et al.*,

    Plaintiffs,

v.

GRETCHEN WHITMER, *et al.,*

    Defendants.

_____/

CASE NO. 20-cv-12579
DISTRICT JUDGE LAURIE J. MICHELSON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO ACKNOWLEDGE FILED GRIEVANCES (ECF No. 21), FOR DISCOVERY AND INSPECTION (ECF No. 25), FOR ORDER TO SHOW CAUSE (ECF No. 32), and MOTION TO AMEND COMPLAINT (ECF No. 38); and DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 20).**

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' various Motions, (ECF Nos. 21, 25, 32, 38), be **DENIED**, and Defendants' Motion to Dismiss and for Summary Judgment, (ECF No. 20), be **GRANTED**.

## II. REPORT

### A. Introduction

On September 9, 2020, Plaintiffs, who appear before the Court *pro se*, filed a complaint against Defendants Heidi Washington, Director of the Michigan Department of Corrections, and current Michigan Governor Gretchen Whitmer (collectively,

"Defendants"), under 42 U.S.C. § 1983 alleging a violation of the Eighth Amendment. (ECF No. 1, PageID.2.)

All pretrial matters were referred to the undersigned Magistrate Judge on October 26, 2020. (ECF No. 10.) Below, I summarize the allegations set forth in the instant Motions, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

### 1. Factual Background

Plaintiffs in this case originally consisted of a combination of 12 inmates at Cooper Street Correctional Facility in Jackson and four non-inmate Plaintiffs (who are three residents of Pontiac and one resident of Bay City). The non-inmate Plaintiffs, Nina Blackburn, Thomas Scott, Rochelle Brady, and Donovan Tillery, claimed to be "acting on behalf of all Michigan Citizenry/General population thereof." (ECF No. 1, PageID.2.) In Plaintiffs' complaint, they allege that Governor Gretchen Whitmer and Heidi Washington have "acted conspiratorially, knowingly, intelligently, and wanton negligently" regarding the spread of COVID-19, which has negatively affected the "mental and physical well beings, health, and very lives" of the general public and inmates. (ECF No. 1, PageID.8.) Plaintiffs emphasize Whitmer's Executive Order No. 2020-29, which specified steps to keep incarcerated Michigan citizens safe from the virus. (*Id*. at PageID.9.) Plaintiffs claim that, referring to a conspiracy of some kind between the two, Whitmer and Washington "work[ed] by collaborating and/or combinedly, and wrote their protocols and procedures in the form of Administrate Acts having the force of law"; Plaintiffs then refer to Washington's "Director's Office Memorandums (DOMs)." (*Id*. at PageID.10.) Plaintiffs

argue that, after several grievances filed by inmate Plaintiffs were denied at various Steps, "[t]his Court can clearly see that the Defendants have been covering-up their illegal actions, and after having allegedly put their so called laws, rules and regulations into place that they don't even follow them themselves, proving a case for imminent danger and warranting their request for a [TRO] . . . ." (*Id*. at PageID.12.) Specifically, Plaintiffs point to "violations" including "officers not wearing masks, PPE not being given, social distancing protocols looked at as being a joke to the Defendants . . . ." (*Id*.) In short, it appears that Plaintiffs take issue with Whitmer's and Washington's handling of the COVID-19 virus within Michigan prisons.

### 2. Procedural Background

After Plaintiffs filed their complaint and Motion on September 9, 2020, which included a request for a temporary restraining order, the Court entered an Order explaining that "[t]he Court cannot rule on the request for a temporary restraining order until Plaintiffs serve Defendants with the motion and the Defendants have an opportunity to respond (when, as here, the requirements for *ex parte* relief have not been satisfied)." (ECF No. 4, PageID.156) (footnote omitted). Plaintiffs had not yet served the complaint on Defendants at that time, and the Court ordered that they do so by October 16, 2020. (*Id*.)

On October 23, 2020, Plaintiffs sought an order for default judgment due to Defendants' late response to their Motion for a TRO. Plaintiffs were ordered to affect service by October 16, 2020, and Defendants were ordered to respond within seven days; or, by October 23, 2020. (*See* ECF No. 4.) Plaintiffs appear to have provided evidence of service on the Defendants, via certified mail, on October 8, 2020, although it is not entirely

3

clear to whom the service was addressed, (ECF No. 9), and there does not appear to be evidence of receipt of this service by Defendants. Plaintiffs argue in their Motion that they served Defendants on October 8, then returned the certification from their verified mail to the Court on October 15, 2020. (ECF No. 13, PageID.529.) Defendants did not file their Response to the original complaint and Motion for a TRO until October 28, 2020. (ECF No. 11.)

On November 2, 2020, Defendants filed a Response to the Motion for Default Judgment. (ECF No. 14.) Defendants argue in this Response that, contrary to Plaintiffs' assertions, they were not properly served. Specifically, Defendants argue:

> On October 26, 2020, this Court entered Plaintiffs proof of service into the PACER docket and backdated the date of filing as October 15, 2020. (ECF No. 9.) These proofs of service appear to show that "DTMB Delivery Services" signed for receipt of mail received on October 8, 2020. (ECF No. 9, Page ID.171-172.) The proofs of service do not show that delivery of the mail was restricted to Defendants Whitmer or Washington, or that Defendants Whitmer or Washington signed anything.

(ECF No. 14, PageID.542.) Apparently, the service sent by Plaintiffs to Whitmer contained a document addressed to Washington, and "at the date of filing this response, the Governor's office still have not received a summons addressed to Defendant Whitmer in this case." (*Id.* at PageID.541.) To support this, Defendants have submitted a declaration from Kristina Gierhart, Executive Assistant in the Office of the Governor, confirming as much. (ECF No. 15.)

On January 27, 2021, Judge Michelson issued an order directing Plaintiffs to comply with Local Rule 5.1. (ECF No. 41.) Most recently, Judge Michelson issued an order striking

4

an Emergency Motion for reconsideration by Plaintiffs for failure to comply with local rules. (ECF No. 46; ECF No. 47.)

At this time, the only remaining Plaintiffs are prisoners; on January 26, 2021, Judge Michelson ordered the non-inmate Plaintiffs—Nina Blackburn, Rochelle Brady, Donovan Tillery, and Thomas Scott—dismissed from this action for lack of standing. (ECF No. 40, PageID.998.) As such they are no longer parties to this action. Of the remaining Plaintiffs, the mail sent to George Tillery, Tyrone Taylor, and Lothario Triplett at their prison address is returned as undeliverable; our court docket indicates that Taylor has been paroled and that Michael Comtois has passed away. This seemingly leaves Plaintiffs John T. George, Anthony Jones, Adam Meyers, Harvey Bradford, Baron Hobson, Brian Pierson, Marvin Adams, and Jeffery Derickson as active Plaintiffs in this case.

Plaintiffs were directed to respond to this Motion by February 10, 2021; Plaintiff Anthony Jones appears to have filed a response individually, which only addresses the argument that he did not exhaust his administrative remedies. (ECF No. 31.) However, as will be discussed below, this Court suggests that dismissal or summary judgment based on exhaustion is not appropriate at this time. The remaining Plaintiffs filed a response on December 4, 2020. (ECF No. 33.) Plaintiffs have filed several additional motions. (ECF Nos. 21, 25, 32, 38.)

**B.     Defendants' Motion to Dismiss and for Summary Judgment**

Defendants advance several arguments in support of their position, many of which track their arguments in prior motions in this case. Below I provide a summary and analysis of each argument in turn.

5

### 1.  Lack of Proper Service Under Rule 4

First, as in their motion in opposition to Plaintiffs' prior motion for a TRO, Defendants argue that they were not properly served. Federal Rule of Civil Procedure 4(e) provides that an individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

In lieu of adhering to the above rule, it appears that Plaintiffs here have instead attempted to follow the rule prescribed by the state of Michigan regarding service and have attempted to mail the relevant documents to Defendants via certified mail. *See* Fed. R. Civ. P. 4(e)(1); Mich. Ct. R. 2.105; (ECF No. 9.) Service may be affected pursuant to the law of the state in which the district court is located. Fed. R. Civ. P. 4(e)(1). The Michigan Court Rules provide that process may be served on a resident or nonresident individual by:

> delivering a summons and a copy of the complaint to the defendant personally; or (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2).

Mich. Ct. R. 2.105(A). However, the mail seems to have been addressed only to "DTMB Delivery Services," and a signed receipt does not appear in the records or docket to this case in violation of Michigan Court Rule 2.105. *See Jones v. F.C.I. Milan Low Staff*, No. 17-cv-13222, 2019 WL 2078988, at *3 (E.D. Mich. Apr. 8, 2019).

Defendants argue that in addition to the above reason for defective service, Plaintiffs' failed to properly serve Defendants for a second, independent reason: "Plaintiffs mailed Defendant Whitmer a copy of the complaint and a summons addressed to Heidi Washington." (ECF No. 20, PageID.765.)

Rule 4(c)(1) provides:

> (1) In General. A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

Defendants argue that Plaintiffs' service was ineffective because it did not include a summons addressed to Defendant Whitmer. (ECF No. 20, PageID.765.) And Rule 4(m) provides, in part,

> (m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Defendants further argue that Plaintiffs have failed to properly serve Defendants within the 90-day period. (ECF No. 20, PageID,765.) I suggest that Plaintiffs have indeed failed to meet the requirements of Rule 4(e)(1), 4(c)(1), and 4(m).

Where service does not comply with these Rules, the complaint must be dismissed: "Plaintiff's complaint shall be dismissed without prejudice because he failed to execute

7

service upon the defendants in a timely manner or establish good cause for an extension of time[.]" *Staples v. Murphy*, No. 16-cv-12367, 2019 WL 1505583, at *2 (E.D. Mich. April 5, 2019) (citing *Reed-Bey v. Pramstaller*, 607 F. App'x. 445, 450 (6th Cir. 2015)). The same is true here and I recommend that the complaint be dismissed on this basis.

But, for thoroughness, I will analysis the remaining arguments below.

### 2.      Non-Inmate Plaintiffs Lack Standing

Next, Defendants argue that the non-inmate Plaintiffs lack standing to bring this action. However, on January 26, 2021, Judge Michelson ordered the non-inmate Plaintiffs—Blackburn, Brady, Tillery, and Scott—dismissed from this action for lack of standing. (ECF No. 40, PageID.998.) As such they are no longer parties to this action and this argument is moot.

### 3.      Inmate Plaintiffs Failed to Exhaust Administrative Remedies

Defendants argue that the remaining inmate Plaintiffs "failed to exhaust their remedies by either neglecting to file Step III grievances related to this suit, failing to follow MDOC procedures and getting their grievances rejected instead of being addressed on the merits, or by failing to wait until the grievance process was fully resolved before filing this civil action." (ECF No. 20, PageID.768.) Further, Defendants argue, "the only inmate Plaintiffs to exhaust substantive grievances during the timeframe relevant to the COVID-19 pandemic—Derickson, Pierson, and Triplett—failed to exhaust any claims against Defendant Whitmer or Washington by failing to name either Defendant in their grievances, and by failing to exhaust any grievances related to COVID-19." (*Id*. at PageID.768-769.)

8

Some background on the exhaustion process is helpful. Congress passed the Prison Litigation Reform Act of 1995 (PLRA) in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203 (2007). A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement, *Woodford*, 548 U.S. at 84: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted[.]" 42 U.S.C. § 1997e(a) (2000).

The *Woodford* Court held that a prisoner has exhausted his or her administrative remedies when (1) no remedies currently remain available, and (2) the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id*. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court determined whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id*. at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). A plaintiff does not need to show proper

9

exhaustion as a part of his or her complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense.

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P). If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X).

If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B). *Woodford* and *Jones* require inmates to file grievances that conform to

10

MDOC procedures to properly exhaust their available remedies. 548 U.S. at 93; 549 U.S. at 218.

While the above is true, in a January 26, 2021 order, Judge Michelson astutely pointed out an important rule which must be considered in this case:

> so far in this case, the treatment of exhaustion has missed an important rule. In unpublished but consistent opinions, the Sixth Circuit has held that prisoners 'cannot be required to exhaust administrative remedies regarding non-grievable issues.' *Peoples v. Bauman*, No. 16-2096, 2017 WL 7050280, at *4 (6th Cir. Sept. 5, 2017) (quoting *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004)). Complaints about the 'content of a policy or procedure' are nongrievable under MDOC rules unless a prisoner is challenging how the policy was specifically applied to him. MDOC PD 03.02.130 ¶ J(8). Neither party has acknowledged this case law or its application here. When Plaintiff Jones filed a grievance that naming the Governor and 'MDOC' and complaining the inadequate COVID-19 precautions constituted deliberate indifference and cruel and unusual punishment, Cooper Street administrative authorities rejected that grievance as 'non-grievable' under MDOC Policy. (ECF No. 1, PageID.81.) The rejection was upheld at Step II and Step III. (*Id.* at PageID.88, 75.) Defendants do not dispute that the Plaintiffs are challenging the prison's COVID-19 management policies and procedures. And exhaustion is not a pleading requirement; it is an affirmative defense and therefore Defendants' burden. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011).

(ECF No. 40.) I agree with Judge Michelson and I suggest that here, as in the prior motion for a TRO, Plaintiffs cannot be required to exhaust their administrative remedies regarding an issue that is not grievable, such as the content of the MDOC's policy concerning their COVID-19 response. Judge Michelson's analysis thoroughly outlines the guidance from the Sixth Circuit on this issue. As such, Defendants' argument here fails and I recommend that summary judgment should not be granted on this basis.

    **4.  Plaintiffs' Complaint Does Not Allege the Personal Involvement of Defendants in a Constitutional Violation**

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which he complains was committed by a person acting under color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id.* at 375–76; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Importantly, liability under § 1983 must be based on more than a theory of respondeat superior. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984).

Defendants argue that Plaintiffs have not sufficiently alleged the personal involvement of Defendants Whitmer or Washington in a constitutional violation. (ECF No. 20, PageID.777.)

In defense of the argument that they have not alleged personal involvement, Plaintiffs argue,

> it matters not what alleged steps the Defendant's [sic] and/or Warden Michelle Floyd have said that they have taken, for which Defendants are hoping to manipulate this Court into believing should be consider for dismissing the Plaintiff's complaint because it proves they have taken reasonable steps in preventing the spreading and contracting of the COVID-19, specially [sic] when they <u>ARE NOT BEING FOLLOWED</u> by many, many, if not by the thousands of times daily[.]

12

(ECF No. 33, PageID.959) (emphasis in original.) Although the lengthy response, as with the other pleadings in this case filed by Plaintiffs, can be difficult to parse,[1] Plaintiffs seem to argue that Defendants Whitmer and Washington are personally involved because their respective orders and regulations regarding COVID-19 precautions are not being consistently followed by prison employees.

However, as mentioned, liability under § 1983 must be based on more than a theory of respondeat superior. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), cert. denied, 469 U.S. 845 (1984). Plaintiffs do not advance an argument, that the undersigned can glean, that either Defendant or Whitmer or Washington were involved in Plaintiffs' grievances other than in a respondeat superior role; that is, other than setting forth direction at a very high level. If Plaintiffs take issue with the manner in which these directions are being carried out, or are not being carried out, they must allege more than just Whitmer and Washington's supervisory role in order to establish personal involvement. "Defendant Governor Whitmer is not subject to suit under § 1983, because plaintiff has failed to allege that she knew of, or took part in, the alleged deprivation of his constitutional rights." *Emery v. Kory*, No. 19-11419, 2019 WL 3219697, at *2 (E.D. Mich. July 15, 2019) (citing *Foster v. Michigan*, 573 F. App'x 377, 392 (6th Cir. 2014) (plaintiff could not sustain claim against Governor Snyder of Michigan on a respondeat superior theory); *Bowen v. Taft*, 62 F. App'x. 117, 118 (6th Cir. 2003) (district court did not err in summarily dismissing prisoner lawsuit against Governor

---

[1] I note that Plaintiffs' have been ordered by the Court to adhere to Local Rule 5.1. (ECF No. 41.)

13

of the State of Ohio, on the ground that the governor could not be liable under a respondeat superior theory)). For these reasons, I suggest that summary judgment is proper in favor of both Defendants on this basis.

### C. Plaintiff's Motions

Plaintiffs have filed several motions. (ECF Nos. 21, 25, 32, 38.) First, Plaintiff Anthony Jones and now former-Plaintiff Nina Blackburn filed an "Emergency Covid-19 Motion to Acknowledge Filed Grievances and Motion to Claim $30 Million Claim." (ECF No. 21.) Plaintiffs also filed a "Motion for Discovery and Inspection," (ECF No. 25), a "Motion to Show Cause for Failure to Properly Serve Defendants and Requesting Court Extend Time for Service Period," (ECF No. 32), and finally, a Motion to Amend the Complaint by Plaintiff Adam Meyers. (ECF No. 38.)

Because I recommend that summary judgment be granted in Defendant's favor at this time, I further recommend that Plaintiffs' various motions be denied as moot. However, out of an abundance of caution, I will examine these Motions separately and suggest that, in the alternative, these may also be denied on their merits.

In Plaintiffs' first motion, Plaintiff Anthony Jones takes issue with Defendant's portrayal of his filed grievances and with Defendants' argument that his grievances against Defendants Whitmer and Washington were not exhausted. (ECF No. 21, PageID.793-795.) Nest, Plaintiff Jones argues that even if the claims by all other Plaintiffs are denied for lack of exhaustion, he should still recover because he has exhausted his grievances. (ECF No. 21, PageID.796-797.) However, as discussed *supra*, exhaustion is not a proper ground for

14

summary judgment at this time. Thus, I suggest that this Motion may be properly denied, on the merits, as moot.

Plaintiffs next filed a "Motion for Discovery and Inspection." (ECF No. 25.) This Motion sets forth requests for several pieces of video evidence from within the prison. (ECF No. 25, PageID.804-08.) Plaintiffs provide that they "have been in touch with at least one (1) attorney" who they claim "has been in touch with the Defendant's [sic] Attorneys to Plaintiff's [sic] understanding[.]" (*Id.* at PageID.807.) However, no appearance has been filed on behalf of Plaintiffs at this time.

This Motion has been filed prematurely and in violation of the general timing rules set forth in Federal Rule of Civil Procedure 26(f). Rule 26(f) provides that, generally, "the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f)(1). The Rule further dictates

> In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

Fed. R. Civ. P 26(f)(2). The Rule further sets forth rules for devising a discovery plan and for creating an expediting schedule. Fed. R. Civ. P. 26(f)(3), (4). No scheduling

conferences have been set, no scheduling orders filed, and it does not appear that the parties have conferred.

Rule 26(d)(1) provides: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." As this Court set forth in *ATF Michigan v. Project Veritas*, 294 F.Supp.3d 693, 694 (E.D. Mich. 2018):

> Rule 26(d) precludes the parties from seeking discovery before the Rule 26(f) conference in most cases, but after that conference, discovery is expected to commence. *See Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2016 WL 3165974, at *2 (S.D. Ohio June 7, 2016), (Rule 26(d)(1) "permits parties to begin discovery after they have held their Rule 26(f) conference."); *Jennings v. City of Lafollette*, No. 3:09-CV-72, 2010 WL 4704462, at *1 (E.D. Tenn. Aug. 24, 2010) ("Following the parties' Rule 26(f) conference, discovery in this matter will commence...."); *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2015 WL 9269758, at *2 (N.D. Cal. Dec. 21, 2015) (Rule 26(d)(1) permits the parties to commence discovery after the Rule 26(f) conference).

Therefore, I suggest that this Motion is premature at this time and thus must be denied on its merits.

Next, Plaintiffs filed a Motion for Order to Show Cause "For Failure to Properly Serve Defendants and Requesting Court Extend Time for Service Period." (ECF No. 32.) Plaintiffs argue "they did not have access to the Summons to ensure that the Defendants would be properly served, and therefore should not be held as not properly filing the Defendants[.]" (ECF No. 32, PageID.951.) Plaintiffs seem to take issue with Defendants' argument that they were not properly served under Rule 4. Per the analysis above regarding Rule 4, Plaintiffs have indeed failed to meet the prescribed requirements for service: "It is

16

the responsibility of a plaintiff to effect proper service on a defendant within the time allowed." *Coney v. Macon-Bibb County, Georgia*, No. 19-00145, 2019 WL 2719799, at *2 (M.D. Ga. June 28, 2019) (citing Fed. R. Civ. P. 4(c)(1)). "If proper service of process is not effected on a defendant within 90 days of the filing of the complaint, 'the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice ... or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the courts shall extend the time for service for an appropriate period.'" *Id*. (citing Fed. R. Civ. P. 4(m)). "Good cause for failure to effect service is an excuse only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Id*. (citation and quotation omitted).

Plaintiffs argue that Defendant Whitmer's shutdowns of local libraries due to Covid-19 has affected their ability to timely serve Defendants. (ECF No. 32, PageID.951.) Because Plaintiffs were aware of this defect in service as early as November 2, 2020, when Defendants pointed out their defects yet still elected to respond to Plaintiffs' Motion for Default Judgment. (ECF No. 14, PageID.542.) Plaintiffs Complaint was filed on September 9, 2020. (ECF No. 1.) This Court ordered Plaintiffs to serve Defendants by October 16, 2020. (ECF No. 4.) Plaintiffs were on notice of service deficiencies and steps have not been taken to properly correct it. As such I suggest that good cause for an extension of time has not been shown, and in conjunction with the above analysis of the Rule 4 deficiencies in this case, I suggest this Motion be denied on the merits.

Finally, Plaintiffs filed a Motion to Amend their complaint to include information of new Covid-19 infections among Plaintiffs along with additional updates regarding their

17

requests for certain masks and use of the library. (ECF No. 38.) This motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure. It provides:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

At the outset I note that this motion was filed in December 2020, far beyond the 21-day deadline from the original filing in September 2020. (ECF No. 38; ECF No. 1.) It was also filed more than 21 days after the answers to the original complaint, and more than 21 days after Defendants filed their Motion for Summary Judgment and Motion to Dismiss. (ECF Nos. 11, 20, 38.) Therefore, Plaintiff requires leave of court to file this amendment. Fed. R. Civ. P. 15(a)(2).

While it is true that Rule 15(a)(2) instructs a court to "freely give leave when justice so requires[,]" in its discretion to allow an amendment, a court considers factors such as undue delay, repeated failure to cure deficiencies by amendments previously allowed, bad faith or dilatory motive, futility of an amended pleading and undue prejudice to the opposing party." *Berry v. Specialized Loan Servicing, LLC*, No. 2:18-cv-02721, 2020 WL 3485577, at *4 (W.D. Tenn. Feb. 24, 2020) (citing *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006)). "Pro se litigants, while granted some leeway, must

18

follow the same rules of procedure that govern other litigants." *Berry*, 2020 WL 3485577, at *4. Because this amendment is filed at this late stage, when Defendants have already filed a motion for both summary judgment and to dismiss, I suggest that this amendment be denied for undue delay.

### D.  Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Plaintiffs' Motions, (ECF Nos. 21, 25, 32, 38), be **DENIED**, and Defendants' Motions to Dismiss and for Summary Judgment, (ECF No. 20.), be **GRANTED**.

## III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 13, 2021                                   S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge